IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| WILLIAM L. DAVIS, JR., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. CV07-435-S-EJL |
| | ) | |
| vs. | ) | **MEMORANDUM DECISION** |
| | ) | **AND ORDER** |
| DENNIS CLARK, PATRICK | ) | |
| WILSON, JIM BAKER, GEORGE | ) | |
| SILVER, and JERRY MARTINEZ, | ) | |
| | ) | |
| Defendants. | ) | |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ | ) | |

Currently pending before the Court are: (1) Plaintiff's Motion for Enlargement of

Time to Complete Discovery (Docket No. 39); (2) Plaintiff's Motion for Discovery

(Docket No. 40); and (3) Defendants' renewed Motion for Summary Judgment (Docket

No. 42).  Having reviewed the record, and otherwise being fully informed, the Court

enters the following Order.

## I.  FACTUAL BACKGROUND[1]

Plaintiff is an inmate in the custody of the Idaho Department of Correction.  At the

time the allegations in the Complaint arose, Plaintiff was a pre-trial detainee in the

custody of the City of Jerome and later the County of Twin Falls.

_____

[1]  For a more thorough recitation of the alleged facts, see the Court's *Initial Review Order* (Docket No. 6).

**ORDER  1**

Plaintiff's allegations fall into three basic categories.  First, Plaintiff alleges that the City of Jerome police treated him with deliberate indifference between November 4 and 5, 2005, when he made several requests for assistance as he was experiencing "an adverse reaction to methamphetamine."  *Prisoner Civil Rights Complaint* ("Complaint"), ¶¶ 6-23 (Docket No. 3).[2]  Second, Plaintiff alleges that the City of Jerome police used excessive force against him when he was shot and later handcuffed after assaulting police with a knife in front of St. Benedict's Regional Medical Center on November 5, 2005.  *Id.* at ¶¶ 24-30.[3]  Third, Plaintiff alleges that he was treated with deliberate indifference while in pre-trial custody at the Jerome County jail.  *Id.* at ¶¶ 31-33, 39.

## II.  PROCEDURAL BACKGROUND

On April 2, 2008, the Court conducted an initial review of Plaintiff's claims and determined that Plaintiff could proceed with his excessive force claims against the individual arresting officers:  George Silver III, Dennis Clark, Patrick Wilson, Jim Baker, and Jerry Martinez.  *Initial Review Order*, pp. 6-8 (Docket No. 6).  In addition, the Court made clear that Plaintiff cannot challenge his conviction without filing a writ of habeas corpus; therefore, he was not authorized to proceed with Fourth and Sixth Amendment claims relating to his arrest and conviction for aggravated assault.  *Id.* at pp. 9-10.

---

[2]  *See Initial Review Order*, p. 6 (Docket No. 6) (holding Plaintiffs' allegations "adequately state a cognizable claim against the individual police officers based on their alleged deliberate indifference to his safety").

[3]  Plaintiff was later charged and pleaded guilty to aggravated assault for his conduct immediately prior to the shooting.

**ORDER  2**

## III.  SUMMARY JUDGMENT

On January 7, 2009, Defendants filed a Motion for Summary Judgment (Docket No. 22).  The Court denied the motion without prejudice, in order to allow discovery to proceed.  *Order*, p. 3 (Docket No. 37).  The discovery deadline passed on August 31, 2009, and Defendants renewed their motion for summary judgment on October 6, 2009. (Docket No. 42).

**A.      Summary Judgment Standard**

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  One of the principal purposes of summary judgment "is to isolate and dispose of factually unsupported claims . . . ."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." Id. at 327.  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986).  Material facts are those that may affect the outcome of the case.  *See id.* at 248.

**ORDER  3**

The moving party bears the initial burden demonstrating the absence of a genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir.2001) (*en banc*).  To carry this burden, the moving party need not introduce any affirmative evidence, but may simply point out the absence of evidence to support the non-moving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir.2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in his or her favor. *Id.*  The non-moving party must go beyond the pleadings and show by affidavits or by discovery or disclosure materials that a genuine issue of material fact exists.  Fed. R. Civ. P. 56(c).  *See also Celotex*, 477 U.S. at 324.

**B.     Plaintiff Has No Constitutional Claims Arising from the Allegations of Deliberate Indifference Prior to Plaintiff's Shooting.**

Plaintiff claims that between November 4 and 5, 2005, Defendants Silver, Wilson, and Clark (hereinafter, the "Officers") repeatedly failed to provide assistance to him, despite his threats of suicide and psychotic behavior.  More specifically, Plaintiff alleges that he experienced a severe reaction to methamphetamine and was awake for several days before calling 911 on November 4, 2005.  *Complaint*, p. 6 (Docket No. 3).  The Officers responded to the 911 call, and a companion of Plaintiff's, Ms. Shultz, was there and told the Officers that Plaintiff was fine.  *Id.* at p. 7.  The police left the scene.

The next day, Ms. Schultz allegedly called the police and told them that Plaintiff had become suicidal and had a knife.  *Id.*  According to Plaintiff, the police did not respond to the call.  *Id.*

**ORDER  4**

Plaintiff then called 911 himself, and the Officers again responded to the call. *Id.* at p. 8. Plaintiff allegedly told the Officers that he was depressed, paranoid, and having hallucinations, and the Officers told him to go home and stop calling the police. *Id.*

Before returning home, Plaintiff called 911 a third time, and Officer Silver responded. *Id.* Officer Silver allegedly told Plaintiff to stop calling police or he would be thrown in jail. *Id.*

The issue is whether these allegations adequately state a cognizable constitutional claim against the Officers based on their alleged deliberate indifference to Plaintiff's health and safety. Upon further review, the Court finds that any claims arising from Defendants' alleged deliberate indifference to Plaintiff's needs prior to the shooting must be dismissed, because the claim is based on the Officers failure to act, rather than any affirmative actions that may have endangered Plaintiff, and the Officers had no constitutional duty to act affirmatively to protect the Plaintiff.

The Fourteenth Amendment does not generally confer an "affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 196 (1989). Similarly, "the 14th Amendment does not generally require police officers to provide medical assistance to private citizens." *Penilla v. City of Huntington Park*, 115 F.3d 707, 709 (9th Cir. 1997). The reason behind this rule is that "the Due Process Clause affords

**ORDER 5**

protection against unwarranted government interference . . ., it does not confer an entitlement to such [government aid] as may be necessary to realize all the advantages of that freedom." *Harris v. McRae*, 448 U.S. 297, 317-18 (1980).

There are exceptions to this general rule. For example, "when a state officer's conduct places a person in peril in deliberate indifference to their safety, that conduct creates a constitutional claim." *Penilla*, 115 F.3d at 709; *see also Wood v. Ostrander*, 879 F.2d 583, 590 (9th Cir.1989), *cert. denied*, 498 U.S. 938 (1990) (holding a valid section 1983 claim existed against a state police officer who caused a woman to be stranded in a high-crime area at night where she was subsequently raped). In addition, affirmative duties may arise out of certain "special relationships" created by the State with respect to particular individuals in the state's custody and care. *See DeShaney*, 489 U.S. at 199-200. In such cases, "[t]he affirmative duty to protect arises not from the state's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf." *Id.* at 200.

In the instant case, the allegations fail to state a constitutional claim. There is no indication that Defendants took affirmative steps to endanger Plaintiff or place him at greater risk. Rather, the claim is based on the Officers' alleged failure to act, which does not, by itself, constitute a cognizable constitutional claim.

Moreover, there are no allegations indicating that the Officers owed Plaintiff a special duty to act. Plaintiff was not in custody at that time and the allegations do not

**ORDER  6**

suggest any other circumstance that would give rise to a special relationship or duty to act.

In short, the allegations reflect that the Officers responded to Plaintiff's 911 calls but did not provide the care that Plaintiff may believe, in hindsight, would have protected him from the harm that later occurred.  These allegations do not support a constitutional claim for deliberate indifference arising from the events that occurred prior to the shooting.[4]

## C.     Plaintiff Has Not Stated a Claim Arising from the Medical Treatment He Received While in Pretrial Custody in Twin Falls County.

To be clear, the *Initial Review Order* resulted in the dismissal of the claims related to Plaintiff's medical treatment while he was in pretrial detention.  The only remaining Defendants in this action are the individual officers: Defendants Silver, Wilson, Clark, Baker, and Martinez.  There are no allegations that these Defendants had any involvement with Plaintiff or his medical care following the shooting on November 5, 2005. *Complaint*, ¶¶ 32-33 (Docket No. 3).  Accordingly, Plaintiff has not stated a claim with regard to the medical treatment he received while in pre-trial custody.

---

[4] In response to Defendants' motion, Plaintiff raises a dispute of fact concerning whether he had any outstanding warrants on November 4 and 5, 2005, when the police were investigating his various 911 calls.  *Plaintiff's Affidavit and Disputed Material Facts*, p. 2 (Docket No. 44-1).  While this dispute may be genuine, it is not material to the analysis here.  Even if there were outstanding warrants, Defendants are still entitled to judgment as a matter of law, because they had no affirmative duty to protect Plaintiff from harming himself, despite his various 911 calls on November 4 and 5, 2005. Defendants left him in no greater peril than he was before the calls.

**ORDER  7**

**D.    Allegations of Excessive Force During and Immediately Following the Shooting Survive Summary Judgment.**

The only substantive claims that Plaintiff has moving forward relate to the allegations of excessive force that occurred the night of November 5, 2005 in front of St. Benedict's Family Medical Center.  Plaintiff claims that (1) Defendant Silver used excessive force against him when electing to use deadly force against him and by allegedly shooting him in the back when he had already fallen, and (2) all five Defendants used excessive force against Plaintiff when he was allegedly beaten immediately following the shooting.

1.    The *Heck* Decision Does Not Bar Plaintiff's Claims

A Section 1983 claim based on actions which would "render a conviction or sentence invalid" must be dismissed if the conviction has not been reversed, expunged, or otherwise called into question.  *Heck v. Humphrey*, 512 U.S. 477, 486 (1994); *Smithart v. Towery*, 79 F.3d 951 (1996).  The general rule is stated as follows:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose lawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

*Heck,* 512 U.S. at 486-87.

**ORDER  8**

In order to determine whether the rule announced in *Heck* would serve as bar to Plaintiff's claims, the Court must first determine "whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Id.* at 487. If it would, then the Complaint must be dismissed, unless Plaintiff demonstrates that the conviction or sentence has already been invalidated. *Id.*

Here, Plaintiff pleaded guilty to an aggravated assault charge. As the *Initial Review Order* makes clear, Plaintiff is not authorized to proceed in the instant lawsuit with any claims relating to the validity or lawfulness of his arrest and conviction. *Initial Review Order*, pp. 9-10 (Docket No. 6). However, Plaintiff's excessive force claim would not imply the invalidity of his arrest and conviction for aggravated assault. *See Smithart*, 79 F.3d at 952 (holding claims of excessive force during arrest not barred under *Heck*). Accordingly, the *Heck* decision does not bar Plaintiff's excessive force claims.

      2.     <u>Judicial Estoppel Applies to Certain Statements Made at Plaintiff's Plea and Sentencing Hearings in Idaho State Court.</u>

Plaintiff was convicted of aggravated assault in Jerome County based on a guilty plea provided pursuant to a plea agreement. *Affidavit of Jerome District Court Clerk Michelle Emerson*, Ex. 4 ("Judgement of Conviction") (Docket No. 22-7). At the plea hearing, Plaintiff was advised of his rights and admitted to the factual basis supporting the aggravated assault charge. *Id*. at Exs. 4 and 5. Based on Plaintiff's testimony, the state district court judge determined that there was a factual basis for the plea. *Id.* Defendants argue that Plaintiff should be judicially estopped from asserting all of the claims in the

**ORDER  9**

Complaint, because they are based on allegations that are inconsistent with Plaintiff's prior testimony in support of the plea.

"Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001). Judicial estoppel is not confined to inconsistent statements within the same litigation but applies "where the incompatible statements have been made in two different cases." *Rissetto v. Plumbers and Steamfitters Local 343*, 94 F.3d 597, 605 (9th Cir. 1996) (applying judicial estoppel to prevent litigant from arguing incompatible positions in workers' compensation and employment discrimination proceedings).

In determining whether to apply the doctrine, courts typically consider: "(1) whether a party's later position is 'clearly inconsistent' with its original position, (2) whether the party has successfully persuaded the court of the earlier position, and (3) whether allowing the inconsistent position would allow the party to 'derive an unfair advantage or impose an unfair detriment on the opposing party.' " *United States v. Ibrahim*, 522 F.3d 1003, 1009 (9th Cir. 2008) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001)). The purpose behind the equitable doctrine is to "to protect the integrity of the judicial process by preventing a litigant from playing fast and loose with the courts." *Whaley v. Belleque*, 520 F.3d 997, 1002 (9th Cir. 2008).

**ORDER 10**

Plaintiff pleaded guilty to aggravated assault under Idaho Code § 18-905. *Affidavit of Jerome District Court Clerk Michelle Emerson*, Ex. 3 (Docket No. 22-7). The Idaho Code defines "aggravated assault" as an assault:

> (a) With a deadly weapon or instrument without intent to kill; or
>
> (b) By any means or force likely to produce great bodily harm.

I.C. § 18-905.

An "assault" is separately defined as:

> (a) An unlawful attempt, coupled with apparent ability, to commit a violent injury on the person of another; or
>
> (b) An intentional, unlawful threat by word or act to do violence to the person of another, coupled with an apparent ability to do so, and doing some act which creates a well-founded fear in such other person that such violence is imminent.

I.C. § 18-901.

In Idaho state proceedings, the trial court is under no obligation to establish the factual basis for the crime prior to accepting a guilty plea, unless a defendant is unwilling or unable to admit his participation in the crime or continues to assert his innocence while pleading guilty. *Odom v. State*, 121 Idaho 625, 626-27, 826 P.2d 1337, 1338-39 (Ct. App. 1992). At the same time, ascertaining the factual background of the plea may be necessary in order for the trial court to determine whether the defendant's plea is made knowingly, intelligently, and voluntarily. *Amerson v. State*, 119 Idaho 994, 996, 812 P.2d

**ORDER  11**

301, 303 (Ct. App. 1991).  Moreover, "a valid guilty plea is a judicial admission of all

facts charged, waives all nonjurisdictional defects and defenses, and obviates the

necessity of the prosecution going forward with the evidence."  *Odom,* 121 Idaho at 627,

826 P.2d at 1339.  Based on a guilty plea, as an alternative to a trial, the trial court may

enter a judgment of conviction.

At his plea hearing on January 27, 2006, the trial judge advised Plaintiff of the

charges against him and maximum possible penalties.  *Affidavit of Jerome District Court*

*Clerk Michelle Emerson*, Ex. 5 (Reporter's Transcript of Plea Hearing), 7:10-8:11

(Docket No. 22-7).  In addition, the trial judge asked the plaintiff to describe why he

wanted to plead guilty to the aggravated assault charge.  *Id.* at 17:1-5.  In response,

Plaintiff's counsel indicated that Plaintiff did not remember the factual events giving rise

to his aggravated assault charge, because of his "methamphetamine addiction."  *Id.* at

17:25-18:5.  However, Plaintiff's counsel also stated that Plaintiff concurred with the

following facts, based on the statements of law enforcement authorities and independent

eye witnesses:

> Mr. Davis got out of his car with a knife, a large butcher
> knife, did not comply with officer's orders to put it down. . . .
>
> Mr. Davis, started to walk away, then turned, came back with
> a knife up-raised and came toward the officers.  He did not
> comply with the officer's request to put the knife down.  He
> yelled, "Go ahead, shoot me, shoot me," as he came forward.
> Gun fire occurred and Mr. Davis was shot.

*Id.* at 17:12-18-5.

**ORDER  12**

In addition, Plaintiff stated that he had a chance to review the police reports and testified as follows, "I do believe that my behavior that night and the way I was holding the knife and carrying the knife and walking toward the officers is what I do believe that they were - that they felt threatened." *Id.* at 19:3-7.  When the Judge asked Plaintiff, "Do you believe they reasonably believed that your actions could cause them great bodily harm?"  Plaintiff responded, "Yes, Your Honor." *Id.* at 19:8-11.

Also at the plea hearing, the Judge asked Plaintiff, "[D]o you believe your rights have been violated in this matter?"  Plaintiff responded, "No, Your Honor." *Id*. at 16:7-9.

Further, at his sentencing hearing on March 27, 2006, Plaintiff, who appeared to struggle with the fact that he did not intend to hurt the officers, testified as follows:

> You know, I've had the last almost six months now to overlook all that's happened to me at this time . . . .  And I came to terms with this [plea] agreement for myself because I knew that I had put three officers' lives in jeopardy because of something that I was feeling that night.  And at first I had run away out of the van from the officers, and because of paranoia or something I can never understand myself of what was in control of me that night or anything that had caused my mind to be where it was at, I turned around and I headed toward the officers.  All I remember is just being shot one time, and the next thing I- the next time that I remember I was on my way to [life flight].

*Id.* at Ex. 6 (Reporter's Transcript of Sentencing Hearing), 42:21-43:16 (Docket No. 22-7).

In light of the above statements, Defendants argue that Plaintiff should be judicially estopped from taking any positions inconsistent with the following: (1) Plaintiff

**ORDER  13**

approached the officers with a knife in a threatening manner; the officers reasonably believed that Plaintiff's actions could cause them great bodily harm; and Plaintiff placed the officers' lives in jeopardy; (2) Plaintiff has no memory of the night in question except for being shot one time and then being airlifted by life flight; and (3) Plaintiff's constitutional rights were not violated.  *See Memorandum in Support of Defendant's Motion for Summary Judgment*, p. 5 (Docket No. 22-1).  Defendants further argue that Plaintiff's claims should be dismissed, because he cannot dispute these facts.

Judicial estoppel is appropriate only to the extent that Plaintiff cannot deny that he approached the officers with a knife in a threatening manner; the officers reasonably believed that Plaintiff's actions could cause them great bodily harm; and Plaintiff placed the officers' lives in jeopardy.  First, Plaintiff clearly took these positions before the state district court judge who then relied on them in finding a factual basis for the guilty plea. Second, Plaintiff obtained an advantage from this position, because, in exchange for his guilty plea, the State of Idaho agreed to dismiss certain more serious accounts Plaintiff, including a penalty enhancement pursuant to *Idaho Code* § 19-2520.[5]  Third, to deny these statements would undermine the factual basis for the plea and threaten the integrity of the judicial process.  To hold otherwise would allow Plaintiff to testify as to one set of facts for the benefit of a plea agreement and then testify to the contrary in order to obtain Plaintiff's desired relief, which includes compensatory and punitive damages.

---

[5]  The fact that the State derived some benefit from the guilty plea is of no moment. The Court's analysis is focused upon the benefit Plaintiff received, which was substantial.

**ORDER  14**

Nonetheless, Plaintiff's previous statements regarding his memory of the events at issue do not warrant judicial estoppel.  Plaintiff's previous statements indicating that he did not remember the events in question are not clearly inconsistent with any of his statements here.  Plaintiff may claim at one time that he does not remember certain events and later claim that he has recovered his memory.  One statement does not necessarily preclude the other, though it may speak to the issue of Plaintiff's credibility.

Similarly, Plaintiff should not be judicially estopped from making the excessive force claims at issue here.  Though Plaintiff stated at his plea hearing that his constitutional rights had not been violated, the excessive force claim was not at issue, the statement was not adopted by the state court, there is no risk of inconsistent results, and there is no threat to the integrity of the judicial process.  *See Morris v. California*, 966 F.2d 448, 453 (9th Cir. 1991) (holding judicial estoppel "inapplicable unless the inconsistent statement was actually adopted by the court in the earlier litigation; only in that situation . . . is there a risk of inconsistent results and a threat to the integrity of the judicial process), *cert. denied*, 506 U.S. 831 (1992).  Similarly, though Plaintiff cannot deny that: (1) he approached the officers with a knife in a threatening manner; (2) the officers reasonably believed that Plaintiff's actions could cause them great bodily harm; and (3) Plaintiff placed the officers' lives in jeopardy; it is not inconsistent for Plaintiff to also claim that Defendants responded to his threat with excessive force, either by shooting him, shooting him in the back when he had fallen, or beating him after he was shot.

**ORDER  15**

3.      Plaintiff's Excessive Force Claims Are Analyzed Under the Fourth
        Amendment

In the Complaint, Plaintiff claims that Defendants' alleged use of excessive force

violated his Fourth Amendment right to be free from unlawful seizures and his Eighth

Amendment Right to be free from cruel and unusual punishment. *Complaint*, ¶¶ 34-35, 38

(Docket No. 3).[6]  As described further below, Plaintiff does not have an Eighth

Amendment claim; his allegations of excessive force claim must be analyzed under the

Fourth Amendment.

The Eighth Amendment applies "only after the State has complied with the

constitutional guarantees traditionally associated with criminal prosecutions." *Ingraham*

*v. Wright*, 430 U.S. 651, 671, n.40 (1977); *see also Graham v. Connor*, 490 U.S. 386, 393

n.6 (1989).  "[T]he state does not acquire the power to punish with which the Eighth

Amendment is concerned until after it has secured a formal adjudication of guilt in

accordance with due process of law."  *Ingraham*, 430 U.S. at 671, n.40.

Because the allegations of excessive force occurred prior to conviction, the validity

of Plaintiff's claim must be judged in accordance with the Fourth Amendment's

prohibition against unreasonable seizures of the person.  *Graham*, 490 U.S. at 394.

"Where . . . the excessive force claim arises in the context of an arrest or investigatory stop

of a free citizen, it is most properly characterized as one invoking the protections of the

_____

    [6]  Plaintiff's allegations concerning his Sixth Amendment rights and Fourth
Amendment due process rights have been dismissed.  *See Initial Review Order*, p. 10
(Docket No. 6).

**ORDER  16**

Fourth Amendment, which guarantees citizens the right 'to be secure in their persons
... against unreasonable ... seizures' of the person." *Id.*

The Fourth Amendment's "reasonableness" standard," requires "balancing the
nature and quality of the intrusion on a person's liberty with the countervailing
governmental interests at stake." *Davis v. City of Las Vegas*, 478 F.3d 1048, 1054 (9th
Cir. 2007) (quotations omitted) (citing *Smith v. City of Hemet*, 394 F.3d 689, 700 (9th Cir.
2005)).  First, the "quantum of force" must be assessed.  *Id.*  Second, the governmental
interests at stake must be analyzed in light of the circumstances, including: (1) the severity
of the crime at issue; (2) whether the plaintiff posed a threat to the safety of the officers or
others; (3) whether the plaintiff was actively resisting arrest or attempting to flee; and (4)
the availability of alternative methods of subduing the plaintiff.  *Id.* (quoting *Smith*, 394
F.3d at 701).  "Whether a particular use of deadly force was reasonable is rarely
determinable as a matter of law."  *Chew v. Gates*, 27 F.3d 1432, 1443 (9th Cir. 1994).

> a.     Excessive Force Claims Against Defendant Silver

Plaintiff's allegations concerning the force used against him during the shooting are
directed against Defendant Silver exclusively.  Plaintiff raises issues related to the use of
deadly force and as to whether he was shot in the back after he had fallen to the ground.

There are genuine issues of material fact that preclude summary judgment for
Defendants on Plaintiff's excessive force claims.  All determinations of unreasonable force
"must embody allowance for the fact that police officers are often forced to make

**ORDER  17**

split-second judgments-in circumstances that are tense, uncertain, and rapidly

evolving-about the amount of force that is necessary in a particular situation." *Graham*,

490 U.S. at 396-97.  Yet, the excessive force inquiry is fact-intensive and "nearly always

requires a jury to sift through disputed factual contentions, and to draw inferences

therefrom." *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002).  Accordingly, the Ninth

Circuit warns that "summary judgment or judgment as a matter of law in excessive force

cases should be granted sparingly."  *Id.*; *see also Liston v. County of Riverside*, 120 F.3d

965, 976 n. 10 (9th Cir.1997) (as amended) ("We have held repeatedly that the

reasonableness of force used is ordinarily a question of fact for the jury.").

Deadly force is force that creates a substantial risk of death or serious bodily injury.

*Smith v. City of Hemet*, 394 F.3d 689, 704 (9th Cir. 2005).  A police officer may not use

deadly force "unless it is necessary to prevent escape and the officer has probable cause to

believe that the suspect poses a significant threat of death or serious physical injury to the

officer or others."  *Tennessee v. Garner*, 471 U.S. 1, 3, (1985); *see also Graham*, 490 U.S.

at 396 (holding the most important factor in determining reasonableness is "whether the

suspect poses an immediate threat to the safety of the officers or others").  Thus, when a

suspect threatens an officer with a gun or a knife, the officer is typically justified in using

excessive force.  *Smith*, 394 F.3d at704 (citing *Billington v. Smith*, 292 F.3d 1177, 1185

(9th Cir. 2002) (holding that deadly force was justified where a suspect violently resisted

arrest, physically attacked the officer, and grabbed the officer's gun); *Reynolds v. County*

**ORDER  18**

*of San Diego*, 84 F.3d 1162, 1168 (9th Cir. 1996) (holding that deadly force was reasonable where a suspect, who had been behaving erratically, swung a knife at an officer); *Scott v. Henrich*, 39 F.3d 912, 914-15 (9th Cir. 1994) (suggesting that the use of deadly force is objectively reasonable where a suspect points a gun at officers); *Garcia v. United States*, 826 F.2d 806, 812 (9th Cir. 1987) (holding that deadly force was reasonable where the plaintiff attacked a border patrol agent with a rock and stick)).

Here, it is undisputed that Plaintiff has been convicted of aggravated assault based on the fact that, after initially running from Defendants, he turned and advanced toward them with a knife in his hands.  In addition, Plaintiff cannot deny that the officers reasonably believed that his actions could cause them great bodily harm and that he placed their lives in jeopardy.  Nonetheless, the parties dispute whether Plaintiff was walking or running as he approached the officers, whether he had the knife up-raised or down, how far from the officers he was at the time he was shot, and whether or not Defendant Wilson attempted to use pepper stray in an effort to slow Plaintiff's approach.  These disputed facts speak to the imminency of Plaintiff's threat and the possible use of alternative means of addressing Plaintiff's threat.  Moreover, in light of these disputed facts and considering: (1) the severity of the force used; (2) Plaintiff had not committed a crime until he turned around and assaulted the officers with a knife; (3) Plaintiff was carrying a knife at some distance from the officers; (4) Plaintiff was carrying a knife, as opposed to a gun; and (4) Plaintiff was clearly emotionally distraught; the Court cannot determine, as a matter of

**ORDER  19**

law, that it was reasonable for Defendant Silver to use deadly force in response to

Plaintiff's threat.  *See Deorle v. Rutherford*, 272 F.3d 1272, 1283 (9th Cir. 2001) ("Even

when an emotionally disturbed individual is 'acting out' and inviting officers to use deadly

force to subdue him, the governmental interest in using such force is diminished by the

fact that the officers are confronted, not with a person who has committed a serious crime

against others, but with a mentally ill individual.").

Plaintiff also alleges that Defendant Silver shot him in the back once he had fallen

to the ground. *Complaint*, ¶ 27 (Docket No. 3).  Defendant Silver admits that he fired four

rounds at Davis but disputes shooting Plaintiff in the back after Plaintiff had fallen to the

ground.  Defendant Silver states, "I fired four rounds at Davis' center mass.  Davis

continued to advance forward until the fourth round went off.  During the process of the

firing of the rounds. [sic] Davis' body seemed to turn as he fell."  *Affidavit of George*

*Silver, III*, ¶ 8 (Docket No. 22-3).  This story is corroborated by Defendant Clark.  *See also*

*Affidavit of Dennis Clark*, ¶ 7 ("Davis appeared to fall in a turning fashion with his back

facing us.") (Docket No. 22-5).

Nonetheless, Plaintiff has created a genuine dispute of fact on this issue  In support

of the allegation that Defendant Silver shot him in the back while he was on the ground,

Plaintiff points to the fact that investigating officers found a "concrete nick" at the far

south end of the driveway.  *See Plaintiff's Affidavit in Support of Objection and Disputed*

*Material Facts*, ¶ 7, Ex. C (Docket No. 44-1).  This nick, caused by one of Defendant

**ORDER  20**

Silver's shots, is just two inches above the ground.  *Id.*  According to Plaintiff, the nick

suggests a bullet trajectory indicating that Defendant Silver shot him in the back when he

was already down.  *Id.*  In addition, it is undisputed that Plaintiff had a bullet lodged in his

back.  *Id.* at Ex. D.

Reading the facts in a light most favorable to Plaintiff and making all reasonable

inferences on his behalf, there is a genuine dispute of fact as to whether Plaintiff was shot

in the back after he had fallen.  Such a fact, if proved at trial, would support a finding that

Defendant Silver used excessive force when he shot Plaintiff.

Given the fact-based, reasonableness inquiry, the Court cannot resolve Plaintiff's

excessive force claims against Defendant Silver on summary judgment.  Disputes of fact

concerning the use of deadly force and whether Plaintiff was shot in the back after he had

fallen preclude summary judgment on these claims.

b.     Excessive Force After the Shooting

Plaintiff's allegations of excessive force after the shooting are directed at all five

remaining Defendants.  Plaintiff alleges that he initially lost consciousness but woke up

with all five Defendants "punching and poking him in their attempt to put restraints on

[him]."  *Complaint*, ¶ 28 (Docket No. 3).  Plaintiff further alleges that he tried to get away

but was restrained.  *Id.* at ¶¶ 28-29.  Plaintiff claims that he suffered injuries as a result of

the two bullet wounds as well as the beating.  *Id.* at ¶ 29.

All five Defendants submit affidavits disputing Plaintiff's allegations.  Defendants

**ORDER  21**

argue that Defendants Silver, Clark, and Davis, were unable to handcuff or otherwise secure Plaintiff after he had been shot.  *See, e.g., Affidavit of George Silver,* III, ¶ 9 (Docket No. 9).  Only with the help of two additional officers, Defendants Martinez and Baker, were Defendants Silver, Clark, and Davis able to handcuff Plaintiff, who Defendants' claim fought amazingly hard.  *Id.*

Despite a lack of evidence corroborating his claims, Plaintiff has created a dispute of fact concerning the use of excessive force to restrain him after he was shot.  He alleges that Defendants punched and poked him after he had been shot twice.  He also alleges that he had passed out and was unconscious prior to the beating.  These facts are hotly disputed and can only be resolved through a credibility finding that the Court may not make on summary judgment.

**E.    Immunity**

The Court cannot determine as a matter of law that Defendants are entitled to qualified immunity for the claims arising from and after the shooting.  Generally, qualified immunity "shields government officials performing discretionary functions from liability for civil damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Scott v. Henrich*, 39 F.3d 912, 914 (9th Cir. 1994) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "In Fourth Amendment unreasonable force cases . . . the qualified immunity inquiry is the same as the inquiry made on the merits."  *Id.* (quoting *Hopkins v. Andaya*,

**ORDER  22**

958 F.2d 881, 885 n. 3 (9th Cir. 1992)).  However, "even though reasonableness traditionally is a question of fact for the jury . . . , defendants can still win on summary judgment if the district court concludes, after resolving all factual disputes in favor of the plaintiff, that the officer's use of force was objectively reasonable under the circumstances."  *Id.* (citations omitted).

Here, the Court has determined that there are disputes of fact that preclude summary judgment as to whether: (1) Defendant Silver used excessive force when he responded to Plaintiff with deadly force; (2) whether Defendant Silver shot Plaintiff in the back after he had fallen to the ground; and (3) whether all five Defendants punched and poked Plaintiff after he had been shot.  These disputes of fact preclude summary judgment on the issue of whether Defendant Silver is entitled to qualified immunity for his actions.

**F.    State Tort Claims**

Defendant seeks summary judgment on Plaintiff's tort claims.  However, Plaintiff does not make any state tort claims.  *See Memorandum in Support of Objection*, p. 8 (Docket No. 44-2).  The only claims Plaintiff makes here are constitutional claims via 42 U.S.C. § 1983.  Accordingly, Defendant's Motion for Summary Judgment is denied as moot with regard to any tort claims.

## IV.  DISCOVERY MOTIONS

Plaintiff has two pending discovery motions: (1) Motion for Enlargement of Time to Complete Discovery (Docket No. 39) and (2) Plaintiff's Motion for Discovery (Docket

**ORDER  23**

No. 40).  In the first motion, Plaintiff seeks to extend the discovery deadline for a period of 60 days or more, because Defendants have not produced certain discoverable materials, including the Shooting Review Board decision, and Plaintiff has experienced difficulties reviewing the documents he has received on CD-ROM, because "access to computers is very difficult."  *Motion for Enlargement of Time* (Docket No. 39).  If the extension is granted, Plaintiff would also like to extend the deposition and dispositive motion deadlines.  *Id.* at p. 2.

This motion must be denied as moot.  Plaintiff's excessive force claims have survived summary judgment and further discovery would not help save any of Plaintiff's dismissed claims.

Nonetheless, to the extent Defendants have not produced certain relevant documents that Plaintiff has previously requested and are reasonably necessary for effective trial preparation, then Plaintiff should comply with the requirements of *Federal Rule of Civil Procedure* 37 and, if necessary, file a motion to compel.  A motion to compel will not be entertained unless and until Plaintiff has attempted to confer with Defendants' counsel in good faith in an effort to obtain the requested information without court order.

Plaintiff's second "motion" is actually a letter to Defendants' counsel seeking additional materials.  (Docket No. 40).  There is no requested court action.  Therefore, the motion must be denied.

**ORDER  24**

## V.  CONCLUSION

Plaintiff's excessive force claims survive summary judgment.  However, before the Court will set a trial date in this matter, the case will be referred to United States Magistrate Judge Mikel H. Williams for the purposes of conducting a judicial settlement conference on or before May 3, 2010.  Judge Williams' law clerk will contact the parties to schedule the settlement conference at a mutually acceptable time.

## VI.  ORDER

In accordance with the foregoing, IT IS HEREBY ORDERED that:

(1)    Plaintiff's Motion for Enlargement of Time to Complete Discovery (Docket No. 39) is DENIED as MOOT.

(2)    Plaintiff's Motion for Discovery is DENIED (Docket No. 40).

(3)    Defendants' Motion for Summary Judgment (Docket No. 42) is granted only to the extent that:

(a) Plaintiff's claims of deliberate indifference concerning the time period prior to the shooting are DISMISSED; and

(b) Plaintiff's claims of deliberate indifference following the shooting when he was held in pre-trial detention are DISMISSED.

(4)     This case is hereby referred to United States Magistrate Judge Mikel H.

Williams for the purposes of conducting a settlement conference on or before May 3,

2010.

DATED:  **February 23, 2010**

Honorable Edward J. Lodge
U. S. District Judge

**ORDER  26**